**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NOEL MORENO, | ) | 3:25-CV-603 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW RORABACK, *et al.*, | ) | |
| *Defendants*. | ) | June 30, 2026 |

## <u>RULING AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

Sarala V. Nagala, United States District Judge.

Plaintiff Noel Moreno commenced this action *pro se* to challenge certain alleged misconduct and procedural flaws related to a child custody matter pending in Connecticut Superior Court. Plaintiff sues Connecticut Superior Court Judges Andrew Roraback, Ann Lynch and Brian Preleski, along with child support enforcement Magistrate Anthony Fusco (the "Judicial Defendants"), and support enforcement officer Benjamin Runge (collectively, the "State Defendants"), in both their individual and official capacities. Plaintiff also sues Erica Rodriguez, counsel for the opposing party in the underlying state action. Plaintiff alleges that all Defendants violated his constitutional rights throughout the state proceeding.

The State Defendants and Rodriguez have each moved to dismiss the third amended complaint ("TAC"), the operative pleading in this matter. Plaintiff opposes these motions. For the reasons set forth herein, the Court GRANTS Defendants' motions to dismiss and denies Plaintiff leave to amend.

## I.    FACTUAL BACKGROUND

### A.    The Child Custody Case

Plaintiff's TAC details purported flaws with a 2022 state action concerning the custody of his minor child, *Moreno v. Hernandez*, LLI-FA-22-5014329-S. *See generally* TAC, ECF No. 30.[1]

On March 4, 2022, Plaintiff initiated the underlying lawsuit against his minor child's mother through the filing of a custody application. *See* State Def.'s Ex. 2, ECF No. 52-2 at 2–13 (state court docket). After more than a year of litigation between the parties and a trial, on December 1, 2023, the state court (Roraback, J.) issued an order, awarding the parties joint legal custody of the minor child and ordering Plaintiff to pay child support in the amount of $175 per week, plus an additional $25 per week towards a $600 arrearage until the arrearage was paid in full. *See* ECF No. 52-2 at 16–27 (state court memorandum and decision). The State Defendants contend that Plaintiff did not appeal this decision, and Plaintiff does not claim otherwise.

Thereafter, the parties filed various post-judgment motions seeking various forms of relief. Plaintiff, in particular, filed motions seeking recusal of Judge Roraback, transfer of venue, modification of the court's judgment, and a stay pending disqualification of Judge Roraback, among other requests. *Id.* at 28–30, 35–41, 44–46, 48. Various judges of the state court denied the motions to transfer and for recusal, and deferred rulings on the remaining motions. *See id.* at 31, 42–43, 53, 57.

Additionally, on February 13, 2025, Defendant Runge filed an application to find Plaintiff in contempt based on his failure to make child support payments in accordance with the court's judgment. *Id.* at 32. By order dated March 3, 2025, the state court found that Plaintiff was in

---

[1] The Court derives the following facts from the complaint and documents filed in the underlying child custody proceeding, of which the Court may take judicial notice. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

contempt of its order and directed him to pay the child's mother $2,400. *Id.* at 34. Plaintiff appealed the contempt ruling issued against him, but it appears this is the only order that was appealed. *See Moreno*, LLI-FA-22-5014329-S, Dkt. No. 310.00; ECF No. 52-2 at 12. As of the date of this ruling, the state action is ongoing, as post-judgment motions continue to be filed and heard.

   B. The Third Amended Complaint[2]

Plaintiff's TAC alleges that throughout a three-year period, Defendants—who are judges, magistrates, attorneys, support enforcement officers and/or state court staff—violated his parental rights, enforced "unjust" child support orders, retaliated against him for seeking legal redress, and disregarded evidence of the opposing party's misconduct and neglect in the child custody case. ECF No. 30 ¶ 2. Plaintiff further alleges that the State Defendants and Rodriguez conspired together to obstruct filings, issue conflicting orders, prolong litigation and deny him his requested relief. *Id.* at 4.

Plaintiff's TAC explains each Defendant's role in the alleged misconduct and conspiracy to deprive him of his constitutional rights. *See generally* ECF No. 30. Specifically, Plaintiff alleges that Defendant Judge Roraback presided over his state case for more than three years and engaged in judicial misconduct during this time period, including by exercising bias, delaying rulings on motions, "enabling parental alienation," mischaracterizing and/or disregarding evidence unfavorable to his child's mother (and her counsel), and enabling violations of custody orders. *Id.* ¶¶ 11, 22, 23. Plaintiff alleges that Defendant Judge Lynch furthered this misconduct by denying emergency motions, upholding defective orders and declining to correct prior violations. *Id.* ¶ 12.

---

[2] The Court notes that Plaintiff's oppositions to Defendants' motions to dismiss include additional facts that are not alleged in the TAC, which is improper. *See Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint"). Thus, the Court will not consider any new allegations raised in Plaintiff's opposition.

Additionally, Plaintiff alleges that Defendant Fusco issued contempt threats despite due process violations. *Id.* ¶ 13.

Plaintiff alleges that Defendant Rodriguez, the attorney for his child's mother in the underlying state court action, engaged in *ex parte* correspondence and violated certain rules of professional conduct, among other claims. *Id.* ¶ 14. Plaintiff also alleges that Defendant Runge enforced outdated child support orders and threatened Plaintiff with incarceration despite his demonstrated financial hardship and change in circumstances, which presumably rendered him unable to pay the required child support payments. *Id.* ¶ 26.

Finally, Plaintiff alleges that Defendant Judge Preleski executed a temporary restraining order without a hearing, which deprived him of access to his child. *Id.* ¶ 16. Plaintiff clarifies in his opposition that this temporary restraining order was issued in April of 2025 in a state matter distinct and separate from the child custody case discussed above. ECF No. 56 at 3.

Plaintiff brings the following claims: (1) a First Amendment retaliation claim for protected speech and efforts to petition the government; (2) a Fourth Amendment claim based on "unlawful threats of confinement and enforcement without adjudication"; (3) a Fifth Amendment claim based on the denial of "fair process and financial coercion through manipulated proceedings"; (4) a Sixth Amendment claim based on interference with a fair hearing; (5) an Eighth Amendment claim based on "[c]ruel punishment" via threats and other enforcement mechanisms; (6) a Fourteenth Amendment due process claim related to termination of custody and threats of incarceration without notice or a fair hearing; (7) a discrimination claim based on Plaintiff's ethnicity, gender and status as a *pro se* litigant, in violation of the equal protection clause of the Fourteenth Amendment; and (8) a 42 U.S.C. § 1985(3) conspiracy claim. ECF No. 30 at 3–4. Plaintiff also

alleges that the Judicial Defendants violated certain ethics and rules set forth in the Connecticut Code of Judicial Conduct. *Id.* at 4.

As a result of these events, Plaintiff alleges that he suffered significant financial harm, including a decrease in income and the loss of his trucking business and rental properties. *Id.* ¶¶ 5, 24. As relief, Plaintiff seeks punitive and compensatory damages (of $20 million to $100 million). *Id.* at 4. Plaintiff also seeks declaratory and injunctive relief, including requests that the Court order a federal investigation into the Judicial Defendants' alleged coordinated misconduct; issue a finding that his constitutional rights were violated; transfer the state proceeding to a venue in a different county; prevent any unlawful incarceration stemming from contempt proceedings; and protect his parental rights, including by restoring full custody of his minor child. *Id.* ¶ 7; *see also id.* at 4–5.

The State Defendants and Defendant Rodriguez have each moved to dismiss the TAC. ECF Nos. 52, 61. The State Defendants argue that the Eleventh Amendment bars Plaintiff's claims and requested relief; Section 1983 precludes Plaintiff's requests for injunctive relief; Defendants Roraback, Lynch, Preleski, and Fusco are entitled to absolute judicial immunity; Defendant Runge is entitled to quasi-judicial immunity and qualified immunity; Plaintiff's claims are barred by the *Rooker-Feldman*, *Younger*, *O'Shea* and domestic relations abstention doctrines; Plaintiff fails to state a claim upon which relief can be granted; and Plaintiff's requests for declaratory relief, habeas relief and an investigation should be denied. Defendant Rodriguez likewise argues that Plaintiff's claims are barred by the *Younger* abstention doctrine and that he has not plausibly pleaded a conspiracy claim. Plaintiff opposes these motions. ECF Nos. 56, 64.

For the reasons set forth herein, the motions filed by the State Defendants and Defendant Rodriguez are granted. As there is some overlap between Defendants' arguments concerning

5

*Younger* abstention and the conspiracy claim, the Court addresses those arguments together as necessary.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, determining whether a complaint states a plausible claim for relief

is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But at the same time, a *pro se* complaint must meet the basic pleading standards outlined above to survive a motion to dismiss. *Fowlkes*, 790 F.3d at 387 (citing *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

The Court GRANTS Defendants' motions to dismiss. First, the Court concludes it lacks subject matter jurisdiction over Plaintiff's claims against the State Defendants under the *Rooker-Feldman* doctrine and Eleventh Amendment immunity. Plaintiff's TAC also fails two threshold abstention doctrines advanced by both the State Defendants and, in part, Defendant Rodriguez: the *Younger* abstention doctrine, to the extent Plaintiff requests that the Court intervene in an ongoing state matter, and the domestic relations abstention doctrine. And even if Plaintiff's complaint survived these subject matter jurisdiction and threshold doctrines, his claims against the State Defendants fail because they are entitled to judicial and/or quasi-judicial immunity, and injunctive relief is not permitted against them under Section 1983. Finally, the Court concludes that Plaintiff has not plausibly pleaded a claim of conspiracy as to either the State Defendants or Defendant Rodriguez. Because many of the defects in Plaintiff's claims are substantive and better pleading would not cure them, the Court does not grant Plaintiff leave to amend.

A. Subject Matter Jurisdiction

First, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims against the State Defendants, based on the *Rooker-Feldman* doctrine and Eleventh Amendment immunity.

### 1. Rooker-Feldman Doctrine

First, although the state court case appears to be ongoing as to post-judgment matters, the Court finds that Plaintiff's claims are precluded by the *Rooker-Feldman* doctrine insofar as he challenges the December 1, 2023, judgment awarding him joint custody of his minor child and requiring him to pay child support.

The *Rooker-Feldman* doctrine is derived from two U.S. Supreme Court cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over cases that essentially amount to appeals of state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). The doctrine is rooted in the principle that the jurisdiction to reverse or modify a state court judgment is exclusively within the authority of the United States Supreme Court. *Id.* at 283. For the *Rooker-Feldman* doctrine to apply, four elements are required: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Hoblock v. Albany Ctny. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005).

The Second Circuit has recognized that the *Rooker-Feldman* doctrine applies in circumstances where, as here, a plaintiff seeks to invite review and judgment of a state family proceeding, even if he styles them as broader constitutional claims:

8

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*Id.* at 87.

Here, all four *Rooker-Feldman* elements are satisfied. First, it is clear that Plaintiff did not prevail in state court, as evidenced by the December 1, 2023, judgment. This judgment granted Plaintiff joint (rather than full) custody of his minor child and ordered him to pay child support—relief he now challenges. Second, Plaintiff complains of injuries caused by this judgment, as he alleges that his constitutional and parental rights were violated through the judicial process and ultimate holding of the state court. Third, Plaintiff asks this Court to award him full custody of his minor child, which would require the Court to effectively modify or otherwise undo the state court's judgment. *See* ECF No. 30 at 4–5 (seeking "[p]rotection of Plaintiff's parental rights, including restoration of custody access unlawfully removed" as a form of relief requested). Finally, the fourth element is satisfied because Plaintiff commenced this action on April 15, 2025, more than a year after the December 1, 2023, state court judgment.

The Court acknowledges that the underlying state case appears to be ongoing and that the parties have filed post-judgment submissions in that case. Notwithstanding, recent developments in application of the *Rooker-Feldman* confirm the Court's conclusion. The Second Circuit had previously held that the *Rooker-Feldman* doctrine generally "applies only after state-court proceedings have ended" or when they led to orders reviewable by the U.S. Supreme Court (or where orders satisfy an applicable exception). *Hunter v. McMahon*, 75 F.4th 62, 67, 70 (2d Cir. 2023) (quoting *Exxon Mobil*, 544 U.S. at 291). In the Second Circuit's view, proceedings end

for *Rooker-Feldman* purposes "when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum"; thus, if an appeal was pending at the time that the federal lawsuit is commenced, *Rooker-Feldman* does not apply. *Hunter*, 75 F.4th at 70 (internal citation omitted). However, the U.S. Supreme Court recently rejected that view, holding that the *Rooker-Feldman* doctrine applies to "federal cases in which plaintiffs seek review of state-court judgments, regardless of whether those judgments are final trial-court judgments or those of a State's highest court." *See T.M. v. Univ. of Md. Med. Sys. Corp.*, No. 25-197, __ S.Ct. __, 2026 WL 1751823, at *9 (U.S. June 18, 2026). It further held that the doctrine applies even "when the state-judgment at issue is subject to further review in state appellate proceedings." *Id.* at *3. In so holding, the Supreme Court effectively overruled Second Circuit precedent providing that *Rooker-Feldman* does not apply if a state court appeal is pending when the federal suit is filed. *See, e.g., Hunter*, 75 F.4th at 70.

Here, of course, Plaintiff neither alleges (nor does the record reflect) that he appealed the December 1, 2023, judgment within the twenty days permitted under Connecticut state law, Conn. Practice Book § 63-1(a), that he sought any extensions for his time to appeal, or that the time to appeal was otherwise tolled in some manner. Indeed, Plaintiff contends the "[p]roceedings are concluded." ECF No. 56 at 7. But even if Plaintiff had appealed, *T.M.* makes clear that the pendency of a state court appeal would not matter. If the federal suit is one brought by a "state-court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," 20206 WL 1751823, at *6 (internal citation omitted), *Rooker-Feldman* requires dismissal for lack of subject matter jurisdiction, regardless of whether a state court appeal is pending. *Id.* at *9 ("allowing federal district courts to review state-court judgments while they are on appeal in the

10

state-court system could undermine the cooperation and comity on which our federal system is built") (cleaned up).  And because all of *Rooker-Feldman*'s requirements are met here, that is the appropriate course.

### 2. *Eleventh Amendment Immunity*

Next, the Court finds that the Eleventh Amendment's grant of immunity bars Plaintiff's claims against the State Defendants sued in their official capacities.

The Eleventh Amendment provides:  "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. Const. amend. XI.  As the Eleventh Amendment "restricts the judicial power under Article III," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996), a motion to dismiss on the basis of sovereign immunity under the Eleventh Amendment is properly brought under Rule 12(b)(1).  *Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019).[3]

The Eleventh Amendment to the U.S. Constitution generally precludes suits against a state absent certain exceptions.  *See CSX Trans., Inc. v. N.Y. St. Off. of Real Prop. Servs.*, 306 F.3d 87, 95, 98 (2d Cir. 2002).  These protections extend to suits brought against state officials sued in their official capacities.  *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002).  Here, because Plaintiff

---

[3] As this Court has previously recognized, "[n]either the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is 'more appropriately viewed as an affirmative defense.'" *Mallison v. Conn. Office of Early Childhood*, 634 F. Supp. 3d 21, 29 n.2 (D. Conn. 2022) (quoting *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n. 1 (2d Cir. 2020)); *see also Allco Finance Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (summary order). The Court believes that the opening phrase of the Eleventh Amendment, which provides that the "judicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court.  Recognizing the uncertainty, however, the Court dismisses Plaintiff's official capacity claims against the State Defendants *without* prejudice.  *See Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (recognizing that dismissals based on lack of subject matter jurisdiction must be without prejudice).

11

sues the State Defendants in their official capacities, they would generally be immune from suit as state officials.[4]

However, there are three recognized exceptions to Eleventh Amendment immunity: (1) when a state consents to a lawsuit; (2) when Congress abrogates a state's Eleventh Amendment immunity; or (3) when the lawsuit seeks prospective relief against state officials—otherwise known as the *Ex parte Young* exception. *See CSX Trans., Inc.*, 306 F.3d at 95, 98; *see also Ex parte Young*, 209 U.S. 123 (1908).

None of these exceptions apply to Plaintiff's claims here. First, there is no suggestion that the State has consented to this suit or that Congress has abrogated immunity to satisfy either of the first two exceptions to sovereign immunity. Additionally, as to the *Ex parte Young* exception, Plaintiff's TAC largely seeks to remedy *past* conduct, rather than any ongoing violations of federal law. Under the *Ex parte Young* exception, a plaintiff may sue a state official acting in his official capacity for prospective, injunctive relief to remedy ongoing violations of federal law. *State Employees Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 95 (2d Cir. 2007). To determine whether the *Ex parte Young* doctrine permits a plaintiff to defeat Eleventh Amendment immunity, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645 (2002) (internal quotations and citation omitted). Plaintiff has the burden of establishing that one or more of these exceptions applies. *Mallison v. Connecticut Off. of Early Childhood*, 657 F. Supp. 3d 221, 233 (D. Conn. 2023).

---

[4] Although Plaintiff's opposition suggests that he sues the State Defendants in their individual capacities, *see* ECF No. 56 at 8, the TAC itself alleges that they are sued in both their individual and official capacities. Thus, the Eleventh Amendment's grant of immunity applies.

For instance, Plaintiff challenges Judge Roraback's and Judge Lynch's alleged practice of judicial bias and misconduct and orders issued by them, Judge Preleski's issuance of a temporary restraining order, and Runge's enforcement of an alleged outdated child support order.  None of these allegations implicate ongoing or prospective harm.  Although the TAC briefly alleges that Judges Roraback and Lynch and Magistrate Fusco enabled certain "violations by dismissing or failing to address ongoing injustices," ECF No. 30 ¶ 25, and that Judge Preleski's issuance of a temporary restraining order alienated him from his child and enabled "ongoing misconduct," *id.* ¶ 28, there are no non-conclusory details in the TAC from which the Court can infer that Plaintiff suffers ongoing violations of federal law.

Plaintiff states in his opposition brief that he seeks to remedy ongoing harm stemming from the state court's orders, but the use of an opposition brief to bolster a complaint or otherwise assert new allegations is improper.  *See Mallison*, 657 F. Supp. 3d at 234; *Shah*, 252 F. App'x at 366.  Furthermore, even if the Court liberally construes Plaintiff's TAC as raising a claim that he is being subjected to ongoing violations of federal law stemming from the order(s) entered in the underlying state case, the Court lacks authority to review or reverse those judgments under the *Rooker-Feldman* doctrine discussed above and the abstention doctrines discussed below.  Thus, the Court finds that the Eleventh Amendment bars Plaintiff's claims against the State Defendants sued in their official capacities, and none of the exceptions to this immunity apply.[5]

Furthermore, Plaintiff's request for declaratory relief is barred by the Eleventh Amendment.  Plaintiff's TAC requests that the Court issue a declaratory judgment that his

---

[5] Relatedly, for the same reasons, the Court finds persuasive State Defendants' argument that Plaintiff lacks standing to seek prospective, injunctive relief against them because he only challenges *past* misconduct and does not plausibly allege that he will be subjected to a similar constitutional violation in the future.  *See Cozayatl Sampedro v. Schriro*, 377 F. Supp. 3d 133, 145 (D. Conn. 2019).

"constitutional and parental rights were violated." ECF No. 30 at 4. But the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Thus, Plaintiff's request for declaratory relief is barred by the Eleventh Amendment.

In sum, the Court lacks jurisdiction over Plaintiff's claims against the State Defendants.

B. Threshold Abstention Doctrines

Even assuming the Court has subject matter jurisdiction over any portion of Plaintiff's complaint, though, it would abstain from deciding his claims under the *Younger* and domestic relations abstention doctrines.

*1. Younger Abstention*

To the extent that the Connecticut Superior Court proceedings are considered to be ongoing, Plaintiff's request that the Court intervene in those proceedings likewise runs afoul of the doctrine of abstention set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, which provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). Under this doctrine, "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022). While *Younger* is not a jurisdictional bar based on Article III requirements, it is a "threshold ground[]" on which a federal court may rely "for denying audience to a case on the merits." *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999).

*Younger* abstention applies in three "exceptional" circumstances: "(1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or

14

(3) where there is a pending civil proceeding 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Gristina v. Merchan*, 131 F.4th 82, 86–87 (2d Cir. 2025) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013)).  The third category includes challenges to both the "processes by which the State compels compliance with judgments of its courts" and the way that state courts manage their own proceedings. *Id.* at 91; *see also Cavanaugh*, 28 F.4th at 434.  In determining whether *Younger* abstention applies, courts may also appropriately consider three additional factors identified in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) that "further counsel in favor of abstention." *Cavanaugh*, 28 F.4th at 432.  These factors include whether: "there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Cavanaugh*, 28 F.4th at 432 (quoting *Sprint*, 571 U.S. at 81).  These factors are not dispositive but, rather, are additional factors appropriately considered before invoking *Younger* abstention. *Id.* (citing *Sprint*, 571 U.S. at 81).

The Court finds that the circumstances of this case fit within *Younger*'s third "exceptional" category:  pending state proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 72–73.  As the Second Circuit has explained, when a state court order concerns the way that it manages its proceedings in a subject matter in which the state has a strong interest, it is considered "integral to the State court's ability to perform its judicial function." *Gristina*, 131 F.4th at 90 (quoting *Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427–28 (2d Cir. 2015)).  In *Falco*, the Second Circuit held that a district court properly abstained from exercising jurisdiction in an action challenging the constitutionality of a New York state law, in connection with an ongoing New York state divorce and child custody proceeding. *Falco*, 805 F.3d at 427.  In the underlying state

15

proceeding, the state court issued an order directing the plaintiff and his wife to each pay half of the attorney's fees, subject to reallocation at trial, and subsequently ordered the plaintiff to show cause why he should not be held in contempt for his failure to comply with the order. *Id.* at 426. While the state case was pending, the plaintiff commenced a lawsuit in federal court challenging the constitutionality of authority bestowed upon state judges to issue orders requiring parents to pay for attorneys appointed for their children. *Id.* at 427. The district court dismissed the complaint on *Younger* grounds. *Id.* Upon review, the Second Circuit held that abstention was proper and that the plaintiff's case fell within the third category of cases implicated by *Younger*, as it would require the district court to interfere with the state court's ability to perform its judicial functions. *Id.* at 428. Specifically, the Second Circuit concluded that the case implicated the way New York courts managed their divorce and custody proceedings—an area in which the state has a strong interest. *Id.*

Applying these principles here, the Court finds that Plaintiff's claims implicate *both* the way that the Superior Court manages its proceedings and the processes by which it compels compliance with its judgments in an area in which the state has a strong interest. First, it is clear from Plaintiff's TAC that he seeks to challenge the way that the Superior Court has been conducting its proceedings. Plaintiff requests that the Court transfer the state action to a venue in a different county, review a temporary restraining order, grant him full custody of his minor child, and excuse him from any orders of contempt, among other requests. But these requests would require the Court to interfere with the process by which the Superior Court manages and enforces its own proceedings. For instance, Plaintiff's request that the Court grant him full custody of his minor child would require the Court to effectively reverse or modify the state court order awarding Plaintiff only partial custody. Moreover, Plaintiff's request that the Court excuse him from any

16

orders of contempt due to his failure to make court-ordered child support payments would require the Court to interfere with the Superior Court's process of ensuring compliance with its judgments. *See Cavienss v. Connecticut Dep't of Soc. Servs.*, No. 25-CV-1268 (SFR), 2026 WL 1068032, at *3 (D. Conn. Apr. 20, 2026) (finding that the plaintiff's request for a "preliminary and permanent injunction against continued enforcement" of child support obligations pending in state court was essentially a challenge to the state court's ability to perform its judicial functions because it implicated the processes by which the state compels compliance with its judgments).[6]  Thus, the Court finds that Plaintiff's claims would require the Court to interfere with its ability to perform its judicial functions, which *Younger* forbids.

The non-dispositive factors also support abstention.  The underlying state court proceedings remain ongoing with respect to post-judgment submissions, as reflected on the state case docket and acknowledged by the parties.  Second, matters concerning child custody arrangements, child support, and purported judicial bias in state court proceedings are squarely within the state's interest.  *See Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."); *Wexler v. Lawyers for Children, Inc.*, No. 24-CV-4947 (LTS), 2024 WL 3553190, at *4 (S.D.N.Y. July 26, 2024) (abstaining from case seeking intervention in pending family court state proceedings); *Walker v. Rivera*, No. 1:22-CV-560 (DNH) (TWD), 2022 WL 2341544, at *6 (N.D.N.Y. June 29, 2022) (collecting cases holding that federal courts should abstain from interfering with child custody matters pending in state court), *report and recommendation adopted*, 2022 WL 2805477 (N.D.N.Y. July 18, 2022);  *Kelly v. New York*, No.

---

[6] Additionally, Plaintiff's TAC requests that the Court protect his parental rights and prevent further retaliation, abuse and denial of due process.  To the extent that Plaintiff challenges the inner workings of the Superior Court or otherwise requests that the Court oversee the child custody case, federal courts may not entertain actions that seek to impose "an ongoing federal audit of state proceedings." *Kaufman*, 466 F.3d at 86 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 500 (1974)).

19-CV-2063 (JMA) (ARL), 2020 WL 7042764, at *4–5 (E.D.N.Y. Nov. 30, 2020) (declining to interfere in ongoing state court post-judgment divorce and custody proceedings based on *Younger*, even where plaintiff alleged the state court judges presiding over such proceedings were biased and should have recused themselves). Moreover, there are no facts alleged in Plaintiff's TAC suggesting that he lacks an adequate opportunity to raise his constitutional claims in the Superior Court. Rather, the Superior Court can address his claims and provide any appropriate relief. Accordingly, under *Younger*, the Court cannot exercise jurisdiction over Plaintiff's claims.

Nor is the Court convinced that any exceptions to *Younger* are applicable, as Plaintiff contends. A federal court may "intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54). A plaintiff invoking an exception to *Younger* abstention bears the burden of establishing that one of the exceptions applies. *Id.* The Court acknowledges that Plaintiff's TAC and opposition briefs detail various purported flaws with the underlying state proceeding. But even accepting these allegations as true, Plaintiff does not demonstrate any facts demonstrating bad faith or harassment of him in the context of the state court litigation, or that the state court is an inadequate forum to address his constitutional claims. As the Second Circuit has explained, a "state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious"—will not warrant an exception. *Id.* at 199 (quoting *Schlagler v. Phillips*, 166 F.3d 439, 443–44 (2d Cir. 1999)). Instead, the plaintiff must show that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Id.* Of course, Plaintiff himself initiated the underlying state case, so he is hard-pressed to argue that it was initiated with and animated by an improper purpose. And it is clear that the

18

underlying state case has addressed legitimate issues relating to the placement, care and support of Plaintiff's minor child, as evidenced by its various orders.

Thus, the Court finds that Plaintiff's claims are barred by the *Younger* abstention doctrine to the extent the state court proceeding is considered ongoing, and no exceptions apply.

### 2. *Domestic Relations Abstention Doctrine*

Next, the Court finds it appropriate to decline to adjudicate Plaintiff's claims pursuant to the domestic relations abstention doctrine. As the Second Circuit has noted, there is a distinction between the domestic relations *exception* to subject matter jurisdiction and the domestic relations *abstention* doctrine. *Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019). While the domestic relations exception to subject matter jurisdiction does not apply in federal question cases like this one, the domestic relations abstention doctrine articulated in *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) does. *Id.* Under that abstention doctrine, federal courts may properly abstain from adjudicating claims involving family law or domestic relations issues, so long as those claims can be fully and fairly determined in state court. *Am. Airlines*, 905 F.2d at 14; *Deem*, 941 F.3d at 623–25 (abstaining from jurisdiction where the plaintiff claimed the defendants conspired to violate his rights through unconstitutional custody proceedings).

"The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94 (1890)); *see also United States v. Windsor*, 570 U.S. 744, 766 (2013). When a case calls for a federal court to interpret state domestic relations law or otherwise "immerse itself in domestic relations matters," it must abstain from proceeding with the case due to the state courts' "greater interest and expertise" in that field, "so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines*, 905 F.2d at 14. In other words, family disputes are most suitable for state courts to resolve. *Deem*, 941 F.3d at 625.

Here, insofar as Plaintiff brings his claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, the Court has federal question subject matter jurisdiction to decide them. *See* 28 U.S.C. § 1331. Notwithstanding that Plaintiff's claims invoke federal questions, however, his claims concern domestic relations matters that are inappropriate for this Court to resolve. *See Wexler*, 2024 WL 3553190, at \*4 (explaining that when a federal court would otherwise exercise jurisdiction pursuant to 28 U.S.C. § 1331, it must abstain from adjudicating claims "on the verge of being matrimonial in nature"). Plaintiff's TAC alleges that Defendants suppressed his parental rights and enforced unjust child support orders, and he asks this Court to restore full custody of his minor child. These claims stem directly from the state court's child custody and support determinations.

Moreover, although Plaintiff frames his claims as constitutional violations and contends in his opposition brief that he does not seek reversal of any of the state court orders, a plaintiff need not "request a federal court to alter the state court's domestic relations determination outright for a court to abstain from exercising federal question jurisdiction." *Wexler*, 2024 WL 3553190, at \*4 (cleaned up) (quoting *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992)). Rather, abstention is necessary where adjudication would require the Court to "re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings." *Id.*

This is precisely the case here. Plaintiff's allegations stem from a state domestic relations dispute, and his requested relief would effectively require this Court to review the underlying record and evaluate the propriety of the orders issued in that proceeding. *See Evans v. Adams*, 714 F. Supp. 3d 119, 124 (E.D.N.Y. 2024) (abstaining from adjudicating plaintiff's claims because although they were styled "in constitutional terms," the "requested relief as a practical matter" would require the court to overturn "decisions in the underlying state court action"); *Shaheed v. Waldeier,* No. 24-CV-915 (RER) (MMH), 2024 WL 964930, at \*2 (E.D.N.Y. Mar. 5, 2024)

20

("Although [Plaintiff] alleges Constitutional violations, the requested relief would infringe on the state court's 'greater interest and expertise' in resolving family court matters.") (quoting *Am. Airlines*, 905 F.2d at 14).

And although Plaintiff contends that there are obstacles to a full and fair determination of his claims in the state court, the Court cannot find this is the case, on the present record.  Thus, the Court abstains from exercising jurisdiction over Plaintiff's claims under the domestic relations abstention doctrine.

### C.  Judicial Immunity & Quasi-Judicial Immunity

Next, the Court holds that Plaintiff's claims against the State Defendants are barred by judicial immunity and/or quasi-judicial immunity.

#### 1.  State Judges and Child Support Magistrate

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions," *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009), whether they are sued in their individual or official capacities.  *Szymonik v. Connecticut*, No. 3:18-CV-263 (MPS), 2019 WL 203117, at *7 (D. Conn. Jan. 15, 2019), *aff'd*, 807 F. App'x 97 (2d Cir. 2020) (summary order).  Because judicial immunity is designed to ensure that judicial officers, in exercising their authority, act upon their own convictions "without apprehension of personal consequences," "even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209 (quoting *Bradley v. Fisher,* 80 U.S. 335, 347 (1871) and *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  Nor do allegations that a judicial officer participated in a purported conspiracy defeat judicial immunity.  *See Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987); *see also Patterson v. Rodgers*, 708 F. Supp. 2d 225, 235 (D. Conn. 2010) ("[A]llegations of conspiracy do not defeat judicial immunity.").  Additionally, with respect to requests for injunctive relief brought against judicial officers under 42 U.S.C. § 1983, "injunctive relief shall not be

granted unless a declaratory decree was violated or declaratory relief was unavailable." *Bliven*, 579 F.3d at 209; *see also* 42 U.S.C. § 1983.

Judicial immunity applies if the challenged action "is judicial in nature" and was "not taken in the complete absence of jurisdiction." *Huminski v. Corsones*, 396 F.3d 53, 75 (2d. Cir. 2005); *see also Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). In determining whether an act committed by a judicial officer is judicial, courts examine factors such as whether the act is a function normally performed by the judge and whether the parties dealt with the judge in his judicial capacity. *Id.* at 12–13. Courts have generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature. *Bliven*, 579 F.3d at 210. Judicial immunity does not apply, however, to a judicial officer's administrative decisions. *Id.*

Here, Plaintiff alleges that Judge Roraback engaged in judicial misconduct by delaying rulings on motions and mischaracterizing and disregarding evidence unfavorable to his child's mother, and he appears to squarely challenge the December 1, 2023, judgement Judge Roraback issued. ECF No. 30 ¶¶ 11, 22, 23. Plaintiff also challenges Judge Lynch's pattern of affirming allegedly "defective" orders, Judge Preleski's issuance of a temporary restraining order in a separate state proceeding, which allegedly denied him access to his child without a hearing, and Magistrate Fusco's alleged threats to hold him in contempt. *Id.* ¶¶ 12, 13, 16. But all of these acts are judicial in nature, as they occurred while the judicial Defendants presided over the underlying state proceedings and the orders were issued to resolve legal and factual disputes in those cases. *See, e.g.*, *Arce v. Turnbull*, No. 21-642, 2021 WL 5816687, at *1 (2d Cir. Dec. 8, 2021) (summary order) (concluding that district court did not err by finding that family court judges and magistrates were entitled to absolute immunity when presiding over child support proceedings); *Legister v. Radowitz*, No. 20-CV-9330 (LLS), 2020 WL 7405672, at *5 (S.D.N.Y.

22

Dec. 16, 2020) (finding that family court support magistrate was immune from suit); *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, No. 20-CV-9784 (PGG) (KNF), 2021 WL 4700543, at *8 (S.D.N.Y. July 6, 2021) ("It is clear from the face of the complaint that the plaintiff's claims are based on the defendant's judicial acts taken pursuant to her judicial power and authority, namely, making determinations and issuing orders in the matrimonial proceeding to which the plaintiff is a party."), *report and recommendation adopted*, 2022 WL 901660 (S.D.N.Y. Mar. 28, 2022); *Buhannic v. Friedman*, No. 18-CV-5729 (RA), 2019 WL 481732, at *5 (S.D.N.Y. Feb. 7, 2019) (judge's "decisions to deny [the plaintiff's] various motions in the State Action [were] quintessential judicial acts").  Significantly, the Connecticut legislature has conferred authority in the Connecticut Superior Court to adjudicate issues in family relations matters, including matters involving child support, child custody, and restraining orders.  *See* Conn. Gen. Stat. §§ 46b-1(a), 46b-15, 46b-56 and 46b-84.

Plaintiff's claims against Judges Roraback, Prelieski, Lynch and Magistrate Fusco are thus barred by judicial immunity.  As to Plaintiff's requests for injunctive relief, he has not alleged that a declaratory decree was violated.  *See Bliven*, 579 F.3d at 210.  Thus, Section 1983 also forecloses Plaintiff's claims for injunctive relief against these Defendants.

### 2. Defendant Runge

The Court concludes that Defendant Runge is entitled to quasi-judicial immunity based on his role as a support enforcement officer in the underlying state proceeding.

Judicial immunity extends to non-judicial officials who "perform functions closely associated with the judicial process," including hearing examiners, prosecutors and witnesses. *Dorman*, 821 F.3d at 137 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)).  Acts "'arising out of, or related to, individual cases before the judge' are entitled to absolute quasi-judicial immunity because they are considered 'judicial in nature.'" *Leftridge v. Judicial Branch*, No. 22-

23

CV-411 (JAM), 2023 WL 4304792, at *9 (D. Conn. June 30, 2023) (quoting *Bliven*, 579 F.3d at 210). The relevant inquiry is the "nature and function of the act." *Leftridge*, 2023 WL 4304792, at *9 (quoting *Mireles*, 502 U.S. at 13).

Courts have held that support enforcement officers are entitled to quasi-judicial immunity when performing duties connected to the enforcement of child support orders. *Id.*; *Bimler v. Crouch*, No. 3:04-CV-1478 (WWE), 2005 WL 1074419, at *2 (D. Conn. May 2, 2005). As one court in this district has observed, support enforcement officers bring petitions, investigate the financial affairs of parties for reporting to the family support magistrate, oversee compliance with child support orders, and review such orders to determine whether modification is necessary, among other tasks. *Bimler*, 2005 WL 1074419, at *2; *see also* Conn. Gen. Stat. § 46b-231(s) (describing duties of support enforcement officers). These functions are "an integral part of the judicial process relative to the enforcement of child support obligations and the role of the family support magistrate." *Bimler*, 2005 WL 1074419, at *2. The Court finds this authority persuasive.

Here, Plaintiff alleges that Runge filed an application to hold him in contempt based on his failure to pay child support pursuant to the court's judgment, resulting in a contempt order. Such challenged conduct pertains to Runge's duty to oversee compliance with child support orders as a support enforcement officer and is integral to the judicial process. And although Plaintiff contends that the child support order Runge enforced was allegedly outdated, he proffers no factual details to support that assertion or otherwise demonstrate that the judgment was reversed or modified. Thus, the Court concludes that quasi-judicial immunity bars Plaintiff's claims against Defendant Runge.[7]

---

[7] In light of this holding, the Court does not reach the State Defendants' arguments concerning qualified immunity as to Defendant Runge.

24

D. Conspiracy Claim

In light of the Court's findings herein, it need not reach Defendants' remaining arguments. Nevertheless, the Court briefly addresses whether Plaintiff's conspiracy claim against the State Defendants and Rodriguez state a plausible claim. It concludes that it does not.

Plaintiff brings a conspiracy claim against all Defendants pursuant to 42 U.S.C. § 1985 (3). To state a conspiracy claim under this statute, a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (internal citation omitted). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir. 2007)). To overcome a motion to dismiss, the plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation omitted).

Here, Plaintiff's TAC provides no factual basis to support a meeting of the minds among the Defendants, nor any facts suggesting that Defendants worked together to deny him equal protection of the law based on racial or otherwise discriminatory animus. Plaintiff merely alleges that Judges Preleski, Lynch and Roraback had a "pattern of coordinated retaliation and conspiracy" to deprive him of rights; that there was "improper influence and conspiracy" among court staff and Rodriguez; that Defendants "coordinated a conspiracy" to suppress his civil rights and retaliate against him; and that the Defendants worked in "unison" to prolong litigation and deny him requested relief. *See* ECF No. 30 at 4; *id.* ¶¶ 29, 30. But these conclusory allegations, without

25

more, are insufficient to state a plausible conspiracy claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (affirming district court's dismissal of conspiracy claim and noting that "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss"). Additionally, Plaintiff's bald allegations that he faced discrimination as a Hispanic male and *pro se* litigant, without more, are insufficient to establish any invidious discriminatory animus. Indeed, Plaintiff pleads no facts suggesting that his ethnicity, gender or status as a *pro se* litigant influenced any actions undertaken by any of the Defendants.

Furthermore, the facts alleged against the State Defendants in support of Plaintiff's conspiracy claim largely stem from their issuance and/or enforcement of various court orders in the underlying child custody action. As set forth above, the Court has determined that such actions constitute judicial acts covered by judicial and/or quasi-judicial immunity, and conclusory allegations of conspiracy are insufficient to overcome that protection. *See Dorman,* 821 F.2d at 139; *Patterson*, 708 F. Supp. 2d at 235.

Thus, the Court concludes that Plaintiff fails to state a conspiracy claim against all Defendants, including Defendant Rodriguez.

## IV.    CONCLUSION

For the reasons described herein, the State Defendants' motion to dismiss, ECF No. 52, is **GRANTED**. Plaintiff's claims against the State Defendants are dismissed without prejudice, given that the Court has concluded it lacks subject matter jurisdiction over them. *See Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017). Defendant Rodriguez's motion to dismiss, ECF No. 61, is **GRANTED**, and the dismissal is with prejudice, as it is not based on subject matter jurisdiction grounds. Because the defects in Plaintiff's TAC are substantive and better pleading would not cure them, the Court declines to grant Plaintiff leave to amend. *See*

26

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  The Clerk of Court is directed to enter judgment for Defendants and close this case.

        **SO ORDERED** at Hartford, Connecticut, this 30th day of June, 2026.

                                            */s/ Sarala V. Nagala*
                                            SARALA V. NAGALA
                                            UNITED STATES DISTRICT JUDGE